IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL GARVEY,

Plaintiff, No. CIV-03-1923 LKK GGH P

vs.

U.S. DEPT. OF JUSTICE,

Defendant. FINDINGS AND RECOMMENDATIONS

______________________________/

*Introduction and Summary*

In this action brought pursuant to the Freedom Of Information Act, 5 U.S.C. § 552, and possibly § 552a (the Privacy Act), see Exhibit B to the Complaint,[1] and which has been transferred several times before ultimately residing with the undersigned, plaintiff Garvey seeks records relating to his alleged extradition from Romania in or about October 2000. Plaintiff had fled California after sex offense charges had been filed against him. Plaintiff believes his "extradition," pled also in this court as an actual "kidnapping," see January 9, 2003 FOIA request at 4 was, or should have been, accompanied by documents. These documents would show,

[1] The more appropriate request is under the Privacy Act in that § 552a requires an agency to give an individual access to his own records. The court understands the response of the Department of Justice to have encompassed both the FOIA and the Privacy Act.

according to plaintiff, that his extradition was accomplished unlawfully so as to nullify, or otherwise show the unlawfulness of, his criminal conviction suffered when he was returned to the United States.

The United States (DOJ) counters that plaintiff was never formally extradited. Rather, after the local agency was informed that extradition was problematic because of the nature of the offenses alleged in light of the pertinent extradition treaty, the local agency obtained the assistance of the FBI in acquiring a UFAP[2] warrant from the Central District of California, which in turn caused the State Department to revoke plaintiff's passport, which then in turn caused the Romanian authorities to deport plaintiff. No extradition having taken place, it is not surprising that no documents related to extradition were found.

In this summary judgment, for the most part, plaintiff mistakes argument for the presentation of factual support to raise an issue of fact. He presents only a few snippets of documents, but has not submitted a declaration with respect to any of the facts/argument that he makes. Moreover, his sometimes allegations about kidnapping (without specifics), then extradition, then how he was never placed before any Romanian officials regarding extradition, and then uncertainty as to how he was returned to this country, bespeak a lack of good faith on plaintiff's part in his contesting a "no documents" finding by the Department of Justice in this FOIA/Privacy Act case. The undersigned has no substantial doubt about the adequacy of the search, and finds no legitimate inference of fact to be drawn in plaintiff's favor regarding the adequacy of the search, which would permit this court to deny summary judgment.

*Standards for Summary Judgment on a FOIA/Privacy Act Case*

Summary judgment in FOIA cases utilize a somewhat different standard than in ordinary civil cases:

---

[2] Unauthorized Flight to Avoid Prosecution, 18 U.S.C. § 1073. Although actual prosecutions under this statute must be approved by DOJ, the issuance of a warrant requires no such approval, and the vast majority of UFAPs are dismissed when the fugitive is handed over to state authorities.

> Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." Mace v. EEOC, 37 F.Supp.2d 1144, 1146 (E.D.Miss.1999). "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits." Lion Raisins, Inc. v. USDA, 354 F.3d 1072, 1082 (9th Cir.2004). FN9
>
> FN9. The well-known standard for summary judgment, however, is not germane to a FOIA proceeding. "Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." Minier, 88 F.3d at 800; see also Fiduccia v. United States DOJ, 185 F.3d 1035, 1040 (9th Cir.1999) ("Though this is review of a summary judgment, our review in a FOIA summary judgment case is not simply de novo, nor do we ask whether there is a genuine issue of fact in most cases. Instead, in a FOIA case, we first determine whether the district judge had an adequate factual basis for decision, and if not, remand."); see, e.g., Heeney v. FDA, 1999 U.S. Dist. LEXIS 23365 (C.D.Cal., Mar. 11, 1999) ("[T]he real question before the court on these cross-motions for summary judgment is the adequacy of the Vaughn indices prepared by the FDA and Boston Scientific, and whether they support withholding information under one of the FOIA exemptions.").

National Resources Defense Council v. U.S. Dept. Of Defense, 388 F. Supp. 2d 1086, 1094(C.D. Cal. 2005)

The facts related in the McIntyre Declaration are not directly in dispute. That is, plaintiff does not, and realistically cannot, challenge the facts concerning when and where DOJ personnel searched for plaintiff's records. Rather, plaintiff attempts to persuade the court that matters collateral to the search regarding plaintiff's return to this country should give rise to an inference that the DOJ search was faulty. The district court must determine whether plaintiff's "evidence" leaves substantial doubt as to the adequacy of the search.

> "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.' " Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C.Cir.1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C.Cir.1990)); see Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C.Cir.1994).

> To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Perry v. Block, 684 F.2d 121 (D.C.Cir.1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. Id. at 127. *If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper*." Truitt v. Dep't of State, 897 F.2d at 542.

Wilson v. DEA, 370 F. Supp. 2d 282, 285 (D.D.C. 2005) (emphasis added). This succinctly stated standard mirrors the Ninth Circuit standards set forth concerning the adequacy of the FOIA search,[3] and adds the standard by which the adequacy is judged in a FOIA summary judgment procedure. And again, the issue is *not*, as plaintiff believes, whether his proof demonstrates the possibility that other responsive documents exist, *but whether the search for his requested documents was adequate.* See footnote 3.

Finally, the standards governing Privacy Act searches are the same as those for FOIA. See Hill v. U.S. Air Force, 795 F.2d 1067, 1069 (n.4) (D.C. Cir. 1986).

*Facts*

First, the undisputed logistical facts regarding the search made are set forth. Plaintiff argues against these facts, but presents no direct evidence that they are untrue. Whether plaintiff presents admissible facts from which an inference of inadequacy of search can be drawn are related afterwards.

State of California criminal charges were filed against plaintiff in three counties all alleging sexual offenses with minors. As of 1999, plaintiff was a fugitive on these charges. Plaintiff traveled/fled to Romania. Plaintiff was returned to this country and was ultimately convicted on some charges.

---

[3] See Citizen's Commission on Civil Rights, 45 F.3d 1325 (9th Cir. 1995) citing Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985) (("The agency must: demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." (quotations omitted)). Despite CCHR's arguments about the missing volumes, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Id. (quotation omitted).

On January 9, 2003, plaintiff made a FOIA request to the Criminal Division of the United States Department of Justice (and a Privacy Act request thereby) regarding the "Office of International Affairs."  In that request, plaintiff argued his facts, referenced previous FOIA requests, and ultimately sought:

> This request is for the international extradition file as described above, in addition to, but not limited to, the items listed below:
>
> 1. International extradition file [for plaintiff]...
> 2. All communications between the OIA and any domestic or foreign government...pertaining to the requestor...
> 3. All U.S. Dept. Of Justice practices, policies, or procedures pertaining to international extradition and/or deportation and/or expulsion.
> 4. All Romanian Law, Both in the Romanian and English languages, that OIA had access to between July 29, 1999, and October 27, 2000, inclusive.

Plaintiff's Complaint, Exhibit D.

According to the first McIntyre declaration, the Criminal Division searched its centralized records index for any documents referencing plaintiff, and none were found.  OIA personnel also searched the computerized case tracking and management index, but again, no records pertinent to plaintiff were found.  Thomas McIntyre, Chief Freedom of Information/Privacy Act Unit, responded on May 30, 2003, but only insofar as no records personal to plaintiff could be found.  Plaintiff's Exhibit C. [Plaintiff and Defendant also fail to mention in this summary judgment motion and opposition any dispute about Requests 3 and 4.  The court therefore considers these otherwise problematic requests not to be at issue in this litigation].[4]  Plaintiff appealed this decision to the Office of Information and Policy (OIP).  This component of DOJ remanded the matter for a further search.  Aside from essentially repeating the previous search, OIA personnel searched other potential locations and computers in the

---

[4] A request for "all Romanian law available" does not appear to be cognizable under any FOIA provision.  Documents requesting policies, practices and so forth, unless required to be published in the Federal Register, need only be made available for copying to a requestor.  No agency must continually copy for requestors at taxpayer expense its entire internal libraries.

office, but to no avail. The OIA attorney (Caruth) who allegedly was involved in discussions with California state officials about plaintiff was contacted as well. Plaintiff was again informed that no responsive documents could be found. After suit was filed, one last search was undertaken, and for preparation of the McIntyre Declaration, the search of OIA files and computers was yet again pursued with reported negative results.

In footnote 6 of DOJ's points and authorities, reference was made to yet a further search commissioned by the AUSA assigned to the case. This search undertaken after the first McIntyre declaration had been filed, revealed that the OIA attorney (Caruth) who had discussion with the state prosecutors in Los Angeles had made some personal notes of these phone conversations. It is not clear from the facts why Caruth was now able to discover her personal notes while previously, she was not. Despite the personal nature of the notes, i.e., non-agency documents, in an abundance of caution and with one redaction of an FBI agent's identity, they were disclosed to plaintiff. Supplemental McIntyre Declaration.[5]

DOJ has set forth in its undisputed facts the gist of what several documents in plaintiff's possession set forth concerning his return from Romania to the United States. Plaintiff, although contesting the veracity or completeness of the substance contained in the documents, does not dispute the fact that the documents per se reveal the following:

> Plaintiff's papers indicate that the Los Angeles County District Attorney's office ("LADA") sought advice from OIA under USAM § 9-15.210 in 2000. McIntyre Decl. Exh. 4, Bates pages 29-34. Plaintiff's papers indicate that OIA told LADA that plaintiff was not extraditable from Romania. Bates Page 34, notation dated 9-26-00. Plaintiff's papers indicate that soon afterward, on October 17, 2000, the Central District of California issued a "warrant of

---

[5] The undersigned has considered this part of the Supplemental McIntyre Declaration because the information discovered was not discovered until after the first declaration was filed. However, to the extent that the supplemental declaration beefs up the substance of facts already contained in the first declaration, it will not be considered. The opportunity afforded by the Federal Rules of Civil Procedure and Local Rules to file a reply brief does not include the opportunity to re-write or supplement declarations whose modified/supplemented facts could or should have been available when the first declaration was written. It is not fair to the opposing party to add such facts when the opposing party does not have a chance to respond.

      > arrest for violation of Section 1073 of Title 18 of the United States Code" (UFAP). Bates page 40. Plaintiff's papers indicate that as a consequence, the United States Department of State revoked plaintiff's United States passport. Id. Plaintiff's papers indicate that on October 27, 2000, plaintiff "was arrested by Romanian police for violation of Romanian immigration law." Bates page 38. Plaintiff's papers indicate that he was deported from Romania soon afterward. Bates page 39.

DOJ Undisputed Fact 5.

*Discussion*

Plaintiff does not directly contest the manner and mode of DOJ searches per se, but takes issue with almost every aspect of DOJ's explanation in order to raise an inference that DOJ "must" have documents about his removal because DOJ policies require such documentation to be made. First, plaintiff does not supply a declaration in opposition to summary judgment setting forth these facts. The court should not have to search the record to see if there is something otherwise admissible that can substitute for this defect, and the lack of a declaration is sufficient in and of itself to ignore the inconsistent arguments of plaintiff. Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

The undersigned will nevertheless discuss plaintiff's primary arguments and will review the file for *pertinent* facts, including the verified complaint.[6] See Jones v. Blanas, 393 F.3d 918, 922-923 (9th Cir. 2004) (tasking the court with such review in pro se cases). Despite his kidnapping claim made to DOJ officials in the initial FOIA request, an assertion which if true would probably not be documented by OIA, plaintiff references the *United States Attorney's Manual* to show what should be documented when a *federal* prosecutor is involved in seeking extradition or some other means for return of a suspect. Plaintiff does not show that federal prosecutors were involved with respect to these state charges. All that plaintiff demonstrates is that the Los Angeles County District Attorney's Office asked for some advice from OIA, and an

---

[6] However, no rule of the Ninth Circuit requires that plaintiff's legal argument or conclusionary statements be deemed an admissible fact.

attorney for OIA gave that advice. Any paperwork generated by that informal contact, plaintiff points to a fax from LADA to OIA, is not the type of paperwork which would be placed in a formal case file. There is every indication that after the informal contact, LADA decided upon another method of plaintiff's removal from Romania aside from extradition. As the undersigned is well aware from having signed numerous FBI UFAP warrants, quite often local law enforcement will seek the assistance of the FBI in obtaining such a warrant, which is obtained without any formal assistance of Department of Justice officials in Washington D.C.[7] Although an informal contact with OIA was made in this case by LADA, there is nothing revealed in the facts to suggest that a Criminal Division or OIA official record would be kept of this informal query. Certainly, plaintiff's emphatic and singular, but misperceived, reference to the *U.S. Attorney's Manual* in his opposition does not suggest that the adequacy of the search for plaintiff's records was deficient or made in bad faith. Moreover, plaintiff's on-again-off-again insistence that he was "extradited" such that other extradition databases should have been checked fails to recognize that there is *no* evidence that plaintiff ever went through an extradition process.

The most logical explanation for how plaintiff arrived in this country from Romania, and that supported by plaintiff's documents, and despite plaintiff's irrelevant attempts to castigate law enforcement officers for past misdeeds, is that once the Romanian government was apprised of the existence of the UFAP warrant, plaintiff became *persona non grata* in Romania, and he was ordered to be removed. The existence, or lack thereof, of Romanian due process is not at issue here.[8] And, law enforcement personnel, either state, federal or both were

---

[7] Again, as noted earlier, DOJ would become involved if a UFAP prosecution were actually to be commenced in court.

[8] Whether Romanian officials violated their own law in this matter would have no material bearing on the likelihood that DOJ did not perform an adequate search for records. In any event, the court will not take judicial notice of plaintiff's partial, unauthenticated submission of the Romanian Constitution. <u>See</u> Request filed June 14, 2006.

probably permitted to "accompany" plaintiff on his way out of Romania.  Nothing in this logical explanation would cast substantial doubt on the adequacy of the search performed by the Criminal Division of the Department of Justice *as requested by plaintiff*.[9]

Nor do the existence of belatedly discovered personal notes cast substantial doubt on the adequacy of the search.  Although it is not clear why Ms. Caruth was not able to determine the existence of her personal notes when first asked, the fact remains that she was asked, and asked again prior to the notes discovery.  Rather than showing a lack of diligence or effort, the repeated requests demonstrate the opposite.  That an individual was initially mistaken about her personal notes does not demean DOJ's efforts, nor does it necessarily imply that the efforts were insufficient.  See Nations Mag. v. U.S. Customs Serv., 71 F.3d 885, 892, (n.7) (D.C. Cir. 1995).

Finally, DOJ's reply brief goes on at some length why redaction of one FBI agent's identity from the recently disclosed notes was appropriate under FOIA.  The redaction, of course, could not have been made an issue by plaintiff when the suit was brought, or by DOJ when the motion for summary judgment was filed, because the existence of the notes was unknown.  Nevertheless, the court will not undertake an ex parte analysis of the redaction validity.  Plaintiff has had months to query the court about making an objection to this redaction, but he has not done so.  The only fair inference to be drawn is that plaintiff does not care to avail himself of such an opportunity either because the agent's identity would be of little value to plaintiff, or that he already is aware of the identity due to interactions with the agent during or upon plaintiff's return to this country.

\\\\\

---

[9] If plaintiff's search had been directed at the FBI, there might well have been some documents concerning plaintiff.  However, as the FOIA/Privacy addressed by plaintiff did not logically indicate that a search should be undertaken at the FBI in addition to the Criminal Division of the Department of Justice, the court finds no reason to deny summary judgment.  Even though the FBI is a part of the Department of Justice, it is a huge, quasi-autonomous-in-fact agency.  If plaintiff had desired his request to be directed to the FBI, he should have made that expressly known.

*Conclusion*

The undersigned has no substantial doubt, indeed, no doubt, about the legal adequacy of DOJ's FOIA search. Even if the standard on this summary judgment were the existence of a material fact which would require an evidentiary hearing, no such *material* fact has been raised concerning the adequacy of DOJ's search.[10]

ACCORDINGLY, defendant's motion for summary judgment, filed May 24, 2006, should be granted, and judgment awarded to defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 3/5/07

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
garv1923.sj

[10] As the only focus of this FOIA action is the adequacy of DOJ's search for records, the undersigned has expressed no opinion on the appropriateness of plaintiff's removal from Romania.